Charles Corey for Mr. Berardi. May it please the court, Judge Reinhardt's former law clerk has made my job a bit easier. That's Jeffrey Fisher who was the lawyer for Pena Rodriguez. All of that, Pena Rodriguez, that case came down after the briefing was done in this case. And I think clearly Pena Rodriguez controls the disappearance anyway of 606, or at least takes away that obstacle. 606, the federal rule that says no impeachment of the jury verdict can occur. And Pena Rodriguez said if there's a clear statement of racial animus, racial stereotyping, racial prejudice by a juror, that no impeachment rule has to give way. So it had to give way here because Juror 9 was adamant in his racial upset. He was so upset he would not even deliberate. He turned his back to the jury. But there's another thing that I didn't, in my briefing I was so much on 606. This is an AEDPA case and Pena Rodriguez is not an AEDPA case. It's a direct appeal. So I have to overcome AEDPA. And I think, I briefed it, I think clearly that I have on two bases. Number one, 2254 D1, the state court never ruled on whether 9 was biased. They concentrated on his effect on the jury. Did he persuade other people? And their conclusion was they'd already decided when he had his tantrum. He had a rant. And factually, but the problem is, I think that you can approach this totally de novo. That's, a habeas lawyer wants, in my position, wants you to look at it de novo without AEDPA. And I think you can based on the fact that there was no decision by the California Court of Appeal on the bias of this juror. That's number one. Then moving on to 2254 D2, they really slaughtered the facts in this case badly by saying that the number nine did not have any leverage on any other jurors. And that's totally not true. Now substantial evidence, there were jurors, some jurors said that. But the point is that this, the only reason we're talking about this is because he was a convicting juror. He made no bones about that. He was for conviction. He was so upset by what happened in the jury room, he wrote a letter that started all this off to the court just a few days after the guilty verdict came down, talking about this biased juror. And talking about how he bumped at least one juror off their not guilty verdict. That's just, I mean, that's not substantial. I'm not asking you to re-weigh the evidence. I'm saying in a substantial evidence question, you look at the whole record. When you look at the whole record, and you look at this especially juror five, but he's part of the whole record. He started this whole thing off. There isn't substantial evidence that nine did not affect the holdout jurors. So I think you can decide this de novo under both 2254, D1 and D2. And then the other thing I haven't talked about enough, and even in my briefing, structural error. If he was biased, forgetting about him having an effect on any of the jurors, that's structural. And that's Supreme Court. It's very clear, Sullivan versus Louisiana, when you have a biased judge or a biased juror, it's structural. And I think the court has no choice but to reverse this. And I'd like to save some time. All right, you may do so. Thank you. Good morning, your honors. May it please the court, Deputy Attorney General Christopher Beasley, on behalf of the appellee. Peña-Rodriguez does apply. I agree with that. And 606B, the general no impeachment rule, does give way in this case, and did give way in this case. In fact, the trial judge ended up talking to six different jurors, talking about the deliberations, talking about what happened, talking about what juror number nine said, talking about how it affected them, and that it did not affect any of their deliberations. And therefore, that whole 606 discussion that Mr. Corey has just brought up, really is a red herring here, because all of that evidence was brought in, and the trial judge considered all of it. So that's not really an issue. Mr. Corey suggests that the evidence says that juror number nine would not deliberate. Well, that is completely contrary to the evidence that this trial judge took from the six jurors that came in and talked about the deliberations. Yes, at times he did have his back turned towards the jury, but every single one of those jurors also testified that he did contribute, that he did raise arguments, that he did talk about the facts, that he did indeed contribute and did indeed deliberate. Beyond that, every one of those jurors also talked about how he didn't intimidate or influence anyone in a negative kind of way. There was no evidence on this record of any sort of misconduct on the part of juror number nine. Now, the statement that he made, where he suggests that if the races had been reversed, if the victim had been a white boy and the defendant had been black, that the jury would have reached a verdict faster. Juror number nine did say something to that effect, and it may have been somewhat inarticulate, the way he said it. He did say, after somebody questioned him, he said, if the shoe fits, wear it, or something like that. Correct, yes. He may have been somewhat inarticulate, but when we consider what he's saying, he's really... He made it clear how he felt. Yeah, he made clear how he was feeling. When you consider what he was saying, he's inviting the jurors to examine themselves. Examine yourself. Are you allowing sympathy for the defendant to influence or cloud your judgment? That's not... Well, I think what he was... Actually, he seemed to be suggesting that, or stating, that if the victim had been white and the shooter had been black, they would have convicted immediately, that it was... I don't know if he was stating something just based on his social views of... I mean, his views of society and racism out there, or accusing others of being racist, and not being able to come to a verdict. Yeah, I think that's a fair representation of what he was saying in his frustration. But I think for him, the record in this case, the facts in this case were overwhelming. He saw this evidence and clearly saw that this was a murder. And he wasn't the only one. There were at least eight other jurors initially that agreed with him, and there were three that were disputing and quibbling over the evidence. And as the jury continued to deliberate... No, I wouldn't say quibbling over the evidence. Arguing, deliberating. They weren't persuaded. They were not persuaded. Guilt beyond a reasonable doubt. That's correct. That's like saying, as prosecutors often do, a constitutional violation is just a technical error. No, so there were three... That's correct, Your Honor. There were three jurors who did not see the evidence the same way as the others. And as they continued to deliberate, two additional... Two of those jurors, as the jurors talked about, their arguments against a guilty verdict were thinning. Their arguments were basically evaporating as they continued to deliberate and consider the evidence. And two additional jurors then decided, you know, it's true. We do have here a beyond reasonable doubt finding for guilt. And then when the last juror was seeing the writing on the wall, when the last juror was basically saying it's obvious, I just wish there were some other way, that's the point at which juror number nine made the statement suggesting that if the races had been reversed, the jury would have reached a decision sooner. That doesn't suggest that this juror himself was racially motivated or biased against the defense, and nor does it suggest that he improperly influenced other jurors. As the record shows, the jurors consistently said, no, we were able to verdict independently. We weren't intimidated. We weren't influenced. So when we take the record and look at it as a whole, as this trial court did and as the state courts did, there is no finding of bias as to juror number nine, and there is no finding of misconduct as to juror number nine improperly influencing the other jurors. The state court reasonably got it right. The state court did what it was supposed to do. And based on these facts, reached a correct conclusion. And we would ask this court to affirm the district court's judgment denying the writ. And if this court has no further questions, the people would submit. All right. Thank you, Your Honors. I think I have five minutes, but I won't use it all. The district court accepted totally what juror five said. The district, the federal district court said everything in there is probably right, but I'm stuck with 606. So the worst that I can do is have you remand it. I don't think you need to remand it. But the district court did not decide this based on the bias of nine. In fact, no, the state court of appeals, someone has to point out in that opinion where they ever said nine was unbiased. No, they never reached that issue. That was not decided. That's the point. They dodged it. So did the trial judge. He never ruled on the bias of nine. It was all his effect on the other jurors. If you've got one biased juror under Supreme Court of the United States law, you don't have a conviction. You have a reversal. That's structural error. There's no doubt about that and there should be no doubt here. Thank you. Thank you very much. Counsel. Variety versus Caramo is submitted.
judges: Reinhardt, Fernandez, Wardlaw